IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **DOROTHY GALE WILSON**, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 4:13-CV-207** |
| vs. | § | |
| | § | |
| **ODYSSEY HEALTHCARE GP, LLC,** | § | |
| **GENTIVA HEALTH SERVICES (USA),** | § | **Jury Demanded** |
| **LLC, GENTIVA HEALTH SERVICES,** | § | |
| **INC., and ODYSSEY** | § | |
| **HEALTHCARE, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**COMES NOW** Plaintiff Dorothy Gale Wilson, and in support of her cause of action alleges as follows:

I.   PARTIES

1. Plaintiff Dorothy Gale Wilson ("Wilson" or "Plaintiff") is a resident of the State of Texas.

2. Defendant Odyssey Healthcare GP, LLC ("Odyssey") is a limited liability company organized under the laws of Delaware, based in Kansas, and conducting business in Texas. Defendant Odyssey may be served by serving its registered agent, Blumberg Excelsior Corporate Services, Inc., 814 San Jacinto Blvd., Suite 303, Austin, Texas 78701. Defendant Odyssey also may be served by serving any employee duly authorized to accept service on behalf of Odyssey.

3. Defendant Gentiva Health Services (USA), L.L.C. ("Gentiva") is a limited liability company organized under the laws of Delaware, based in Georgia, and conducting

business in Texas. Defendant Gentiva may be served by serving its registered agent, Blumberg Excelsior Corporate Services, Inc., 814 San Jacinto Blvd., Suite 303, Austin, Texas 78701. Defendant Gentiva also may be served by serving any employee duly authorized to accept service on behalf of Gentiva.

4. Defendant Gentiva Health Services, Inc. ("GHSI") is a corporation organized under the laws of Delaware, based in Georgia, and conducting business in Texas. Defendant Gentiva may be served by serving the Texas Secretary of State via Certified Mail at Texas Secretary of State, Service of Process, P.O. Box 12079, Austin, Texas 78711-2079.

5. Defendant Odyssey Healthcare, Inc. ("OHI") is a corporation organized under the laws of Delaware, based in Georgia, and conducting business in Texas. Defendant OHI may be served by serving its registered agent, Blumberg Excelsior Corporate Services, Inc., 814 San Jacinto Blvd., Suite 303, Austin, Texas 78701. Defendant OHI also may be served by serving any employee duly authorized to accept service on behalf of OHI.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter under 28 US.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this matter is between citizens of different states.

7. Venue properly lies in this Court because all acts and omissions giving rise to this claim took place in Denton County, which is in the District and Division in which suit has been filed.

### III. FACTS SUPPORTING PLAINTIFF WILSON'S CLAIMS

8. OHI is one of the largest hospice providers in the country, providing hospice care to terminally ill patients and their families. OHI is a subsidiary company of Gentiva, a company that provides home health and hospice services nationwide.

9. Defendants maintained a branch/location on South Mayhill Road in Denton, Texas. At all times relevant to this lawsuit, Micah Sutton ("Sutton") was the Executive Director of Defendants' Denton, Texas branch/location.

10. Beginning in July 2011, Defendants employed Wilson at the Denton, Texas branch as a Spiritual Care Coordinator (Chaplain) and Volunteer Coordinator. In that role, Wilson provided Defendants' patients with emotional and spiritual care and guidance and also recruited, trained, and managed Defendants' volunteer staff.

11. In her role, Wilson regularly visited patients in their respective homes. One such patient was a male patient named Omer Brown ("Brown"). Brown lived in Shady Shores, Texas in Denton County.

12. Like every patient, Brown was terminally ill. Unlike other patients, however, Brown was angry, suicidal, volatile, and aggressive. Brown's history as Defendants' patient is as follows:

   a. Brown became a patient in or about March 2012.

   b. During Admitting Nurse DeLinda White's ("White") first visit, Brown kicked White off the property.

   c. Immediately upon becoming a patient, Defendants knew Brown kept firearms at his home.

   d. Brown expressed suicidal thoughts on several occasions. After Wilson's first meeting with Brown, during which Brown expressed his suicidal thoughts, described the guns he owned, and noted that each gun was loaded, Wilson provided Defendants a report wherein Wilson recommended Brown be removed from hospice care and placed in a mental care facility. Despite this

      background, Defendants kept Brown as a patient, took no action, and never required Brown sign the appropriate form indicating his suicidal thoughts.

    e. Defendants indicated they would require Brown's family remove the guns from the home and secure Brown a private caregiver but the family failed to do so. Defendants knew the family failed to do so but Defendants took no action.

    f. Mindy Dolittle ("Dolittle"), a part-time PRN assigned to Brown, told Defendants that Brown needed a psychiatric evaluation and she would not visit Brown's home any longer because she feared for her safety. Defendants took no action.

    g. Despite his volatile and disturbing time as a patient and the risks he posed, Defendants never discharged Brown as a patient, even though they had the ability to do so. Sutton even told Wilson on three separate occasions that Defendants would discharge Brown, but Defendants never did.

13. On or about Friday, April 6, 2012, Sutton, Lynne Norton ("Norton"), Defendants' Patient Care Manager, and Connie Milton ("Milton"), a Certified Nurse Aid assigned to Brown, visited Brown's home. During the visit, they witnessed firsthand Brown's volatile and aggressive behavior. Defendants took no action, however, with respect to Brown's care or the employees assigned to Brown.

14. On or about Wednesday, April 18, 2012, Milton made her scheduled visit to Brown's home. While there, Milton called Wilson and informed her that Brown demanded Wilson visit him that day. Corrin McCullough ("McCullough"), Defendants' Social Worker assigned to Brown, discussed the situation with White and others. After initially deciding to send a psychiatric unit to Brown's home, McCullough later chose not to do so.

15. Wilson then left the office to meet with Brown. As she left the office, Sutton told Wilson "good luck." Sutton and Defendants, however, provided Wilson no support or additional assistance. Nor did Sutton instruct Wilson not to visit Brown. As Milton left Brown's home because Brown's behavior alarmed her, Milton called Wilson and left a voice mail message in which she indicated she believed Brown was "going to do something crazy."

16. Wilson arrived at Brown's home to find Brown extremely angry and volatile. Brown complained Defendants had not supplied Brown with necessary medical supplies and that the failure to do so had been ongoing despite several complaints and notifications.

17. Wilson sent White a text message, indicated she had an emergency regarding Brown, and asked White to visit the home and complete an evaluation. White indicated she was on her way.

18. McCullough and White discussed the situation before White left.

19. Ultimately, White arrived at Brown's home. Wilson had calmed Brown somewhat. Wilson, White, and Brown spoke on Brown's front porch and Brown again became agitated about the lack of care Odyssey provided him. Wilson left Brown and White and entered the house to check Brown's medical supplies.

20. While Wilson was checking Brown's current medical supplies in the living room, Brown entered the room, grabbed some medical supplies, and threw them at Wilson. Brown then pushed Wilson aside, went to his bedroom, moved to his bedside table, removed a handgun from the table, and placed the gun in his shorts. Wilson placed herself in Brown's path and asked for the handgun. Brown again shoved Wilson and moved toward the front porch searching for White. Brown then turned around and headed toward his bathroom. Wilson followed him and again asked for the gun. When Brown reached the bathroom door, he struck Wilson's face. Wilson staggered back. Brown then removed the handgun from his shorts, raised the handgun, and fired at Wilson. The shot barely missed Wilson's leg. Wilson immediately turned and ran toward the porch and discovered Brown apparently locked the door. Ultimately, Wilson got through the door and escaped the house.

21. As Wilson left the front porch, she encountered White. White and Wilson entered White's car and drove away.

22. Ultimately, after a lengthy police standoff, Brown used the handgun to end his own life.

23. As a result of psychological and mental trauma, Wilson has been unable to return to work. In addition, Wilson has difficulty leaving her home and conducting her life's daily affairs.

## IV. STATEMENT OF CLAIMS

### *NEGLIGENCE – FAILURE TO PROVIDE A SAFE WORKPLACE*

24. Wilson incorporates Paragraphs 1 through 23 hereinabove as if fully set forth herein at length.

25. Defendants failed to use ordinary care to protect their employees in light of the substantially certain harm to their employees. Specifically, Defendants were aware of Brown's patient history and actions and the risks he posed to their employees. Defendants took no action to address these known risks. Defendants' own failures in ordering medical supplies contributed to Brown's anger. Furthermore, Defendants took no action to protect its employees, namely Wilson, and placed Wilson in a harmful situation when Wilson visited Brown's home on the day he ultimately committed suicide. These failures resulted in foreseeable harm that was substantially certain to injure Wilson.

26. Defendants' failure was the proximate cause of damages to Wilson for which Wilson hereby sues.

## V. REMEDIES

27. Wherefore, Wilson prays that the Court grant her the following relief:

    a. Actual damages, in a precise amount to be determined by the jury;

    b. Compensatory damages against Defendants as a consequence of Defendants' unlawful actions, in a precise amount to be determined by the jury;

    c. Exemplary damages against Defendants as a consequence of Defendants' unlawful actions, in a precise amount to be determined by the jury;

    d. Prejudgment and post-judgment interest;

    e. Expenses and costs of the action; and

    f. Such other relief as the Court shall deem just and proper.

## VI. CONDITIONS PRECEDENT

28. All conditions precedent to Wilson's right to recover have been performed or have occurred.

## VII. JURY TRIAL DEMAND

Wilson demands a trial by jury on all issues of facts and damages raised in this case.

Respectfully submitted,

**THE COLES FIRM P.C.**
4925 Greenville Ave., Suite 1250
Dallas, Texas 75206
(214) 443-7862 Telephone
(972) 692-7145 Facsimile

By: /s/ Michael E. Coles
    Michael E. Coles, Lead Counsel
    State Bar No. 24007025
    Dustin A. Paschal
    State Bar No. 24051160
    Paul W. Simon
    State Bar No. 24060611

**ATTORNEYS FOR PLAINTIFF
DOROTHY GALE WILSON**